UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
JERRY FRITH,                          :
                                      :
            Plaintiff,                :        07 Civ. 5899 (JSR)
                                      :
            -v-                       :        MEMORANDUM ORDER
                                      :
COREY HILL individually and the CITY  :
OF NEW YORK,                          :
                                      :
            Defendants.               :
------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 54
DATE FILED: 9-23-09

JED S. RAKOFF, U.S.D.J.

        On August 6, 2009, the Honorable Debra Freeman, United States

Magistrate Judge, issued a typically excellent Report and

Recommendation (the "Report") in the above-captioned matter

recommending that the motion of defendant Corey Hill to dismiss

plaintiff's claims against him be granted and that the motion of

defendant the City New York (the "City") to dismiss plaintiff's claims

against it be denied.  Plaintiff Jerry Frith filed two objections to

that portion of the Report that granted Hill's motion to dismiss, on

August 19, 2009 and on August 21, 2009, respectively; and on September

16, 2009 (after having made a telephonic application for, and received,

an extension of time to respond from the Court, see Order dated August

24, 2009), Hill filed his opposition to Frith's objections.  The City

also filed objections to that portion of the Report that denied its

motion to dismiss.[1]  For the reasons stated below, the Court finds that

------------

        [1] The Report was served by electronic filing on August 7,
2009, and the City's objections were filed on August 24, 2009.
Frith has moved to strike all of the City's objections on the
ground that they are untimely under Fed. R. Civ. P. 72(b).  The
City responds that the entry number 47 on the docket for this
case indicates that objections to the Report are due no later
than August 24, 2009.  The City also notes that the Report was
filed after 6:00 p.m. on a Friday, and it points out that if
service is deemed to have occurred on that Friday, its objections

both Frith's objections and the City's objections are without merit,
and the Court hereby adopts the Report in its entirety, grants Hill's
motion to dismiss the Complaint as against him, and denies the City's
motion to dismiss the Complaint as against it.

        Frith's claim pertains to the seizure of certain property from
his person as well as from a vehicle that he was occupying at the time
of his arrest by the New York City police officers on April 10, 2002.
According to the Second Amended Complaint, the officers seized $329 in
cash from Frith's person, $1504 in cash from the console of the
vehicle, and other items of Frith's property (hereinafter, the
"Personal Items").  Second Am. Compl. at 2.  Frith was subsequently
indicted on federal narcotics and firearms charges, and on October 17,
2002, he pleaded guilty to four counts in the indictment.  Id. at 2-3.
He alleges that on October 3, 2003, he sent a letter to the New York
City Police Department requesting the return of his property, but his
request "went unnoticed."  Id. at 3.  Meanwhile, at some point after
Frith's arrest, Hill, who is a Special Agent with the Bureau of
Alcohol, Tobacco, Firearms, and Explosives ("ATF"), took possession of
the Personal Items.  Report at 3.  After attempts to return the
Personal Items to Frith by contacting Frith's family failed, Hill, with
authorization from his ATF field supervisor, destroyed the personal

_____

    are only one business day late, while if service is deemed to
    have occurred on the following Monday (August 10, 2009), its
    objections are timely.  In light of this potential ambiguity and
    in the interest of reaching the merits of this dispute, the Court
    has fully considered the City's objections.

2

items in January 2007. <u>See</u> Second Am. Compl. at 4; Report at 3. On October 31, 2007, Frith was apparently notified of the proper procedures for seeking the return of his property. Report at 3. By that time, however, the Personal Items had been destroyed, and Frith had lost his interest in the money under the Rules of the City of New York. <u>Id.</u> at 3-4.

Frith claims that his procedural due process rights were violated because, at the time of his arrest, he was not given proper notice by the New York City police officers of the procedures for recovering his property, and because Hill destroyed the Personal Items without observing proper procedures. Second Am. Compl. at 3-4. The Second Amended Complaint purports to assert claims against both Hill and the City under 42 U.S.C. § 1983. However, since Hill, as a federal official, cannot be sued under Section 1983, <u>see</u> 42 U.S.C. § 1983 (creating a cause of action for persons who are deprived of a Constitutional or other federal right by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any <u>State or Territory or the District of Columbia</u>") (emphasis added), the Report properly construes the Second Amended Complaint as asserting a <u>Bivens</u> claim against Hill, <u>see</u> Report at 7-8 (citing <u>Daloia v. Rose</u>, 849 F.2d 74, 75 (2d Cir. 1988); <u>see also</u> <u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (holding that an individual allegedly deprived of a constitutional right by federal actors may bring a claim for damages).

3

The Report finds, in sum, that Frith's claim against the City
withstands the City's motion to dismiss because he alleges that he was
not given actual notice of the procedures for recovery of his property
and he cannot be deemed to have had constructive notice thereof.
Report at 13-17.  The Report also finds that, contrary to the City's
arguments, the statute of limitations on Frith's claim has not run.
Id. at 17-19.  On the other hand, the Report finds that Frith's claim
against Hill cannot withstand Hill's motion to dismiss because Hill was
not acting in accordance with established ATF procedures and Frith does
not and cannot assert that he lacks a meaningful post-deprivation
remedy.  Id. at 19-24.

The Court turns first to Frith's objections to that portion of
the Report that recommends dismissing his claims against Hill.  As the
Second Circuit has explained, a court evaluating what process satisfies
the Due Process Clause must distinguish between claims based on
established government procedures and claims based on "random,
unauthorized acts" by governement employees.  Rivera-Powell v. New York
City Board of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing
Hudson v. Palmer, 468 U.S. 517, 532 (1984)).[2]  "[T]he negligent or
intentional deprivation of property through the random and unauthorized
acts of a state or federal employee does not constitute a deprivation
of due process if a meaningful post[-]deprivation remedy for the loss

_____

[2] Although Rivera-Powell discusses a § 1983 claim against
state actors, this analysis applies equally to a Bivens claim.
See Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir. 1999)
(applying this analysis to a Bivens claim); Tavarez v. Reno, 54
F.3d 109, 110 (2d Cir. 1995) (observing that "federal courts have
typically incorporated Section 1983 law into Bivens actions").

4

is available." <u>Stuto v. Fleishman</u>, 164 F.3d 820, 825 (2d Cir. 1999).
The Report finds that because Hill deviated from established ATF rules
by destroying Frith's property after contacting only Frith's family
rather than Frith himself, Hill's conduct was "random and
unauthorized." <u>See</u> Report at 20-21.  Because Frith has a meaningful
post-deprivation remedy in that 31 U.S.C. § 3724(a) authorizes the
Attorney General to settle, for less than $50,000, claims for loss of
property caused by a law enforcement officer, procedural due process is
satisfied here.  <u>See</u> <u>id.</u> at 24-25.

The Report also addresses plaintiff's argument that despite the
fact that Hill deviated from established ATF rules in disposing of
plaintiff's property, because the destruction of plaintiff's property
was approved by an ATF field supervisor, it was carried out in
accordance with established government procedures, so that the
availability of a post-deprivation remedy does not necessarily satisfy
due process.  As the Second Circuit has stated, "the acts of
high-ranking officials who are ultimate decision-makers and have final
authority over significant matters, even if those acts are contrary to
law, should not be considered random and unauthorized conduct for
purposes of a procedural due process analysis." <u>Rivera-Powell</u>, 470
F.3d at 465 (alteration, quotation marks and citations omitted).
However, the Report finds that, apart from certain conclusory
assertions made in Frith's opposition brief, Frith alleges no facts
that would tend to show that the ATF field supervisor was an "ultimate
decision-maker" with "final authority over significant matters." <u>See</u>
Report at 21-22.  The Report also notes that internal ATF rules provide

5

that field supervisors do not establish protocols for disposing of
seized property but rather simply charge them with ensuring that
established protocols are followed.  Id. at 22-23.

Frith objects to these findings, arguing that the facts alleged
in the Second Amended Complaint as well as the ATF regulations make it
plausible to infer that the field supervisor possessed sufficient
authority to be classed as an "ultimate decision-maker."  Objections to
Report and Recommendation Granting Hill's Motion to Dismiss.  Frith
further objects that liability can be established because, in effect,
the ATF deliberately neglected to train its officers in the appropriate
protocols for disposing of seized property.  See Additional Objection
to Recommendation Granting Hill's Motion to Dismiss (citing City of
Canton v. Harris, 489 U.S. 378 (1989)).

The Court agrees with the Report that the facts pleaded are
inadequate to establish that the field supervisor is an "ultimate
decision-maker."  Moreover, as Hill points out in his response to
Frith's objections, see Defendant Corey Hill's Opposition to
Plaintiff's Objections to Magistrate Judge Freeman's Report and
Recommendation at 3-7, Frith's arguments regarding the authority of the
ATF field supervisor, any putative ratification of Hill's acts by that
supervisor, and the ATF's purported failure to train its officers, if
credited, would tend to establish that either the field supervisor or
the ATF itself is potentially liable to Frith.  See, e.g., Velez v.
Levy, 401 F.3d 75, 92-93 (2d Cir. 2005) (holding that a § 1983 claim
was viable against an individual "high ranking" official who departed
from established state procedures but that § 1983 claims against lower-

ranking officials were not); <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (stating, in the context of a § 1983 claim, that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be <u>chargeable to the municipality</u> because their decision is final") (emphasis added); <u>City of Canton</u>, 489 U.S. at 388 (stating that <u>a municipality</u> "can be liable under § 1983 for inadequate training of its employees"). Leaving aside the fact that a <u>Bivens</u> action cannot be maintained against a federal agency, <u>Fed. Deposit Ins. Co. v. Meyer</u>, 510 U.S. 471 (1994), Frith's arguments are unavailing because neither Hill's ATF supervisor nor the ATF itself is named as a defendant; rather, Frith has sued only Hill in his individual capacity. Under no construction of the Second Amended Complaint or any of Frith's subsequent arguments is Hill himself an "ultimate decision-maker" for the purposes of a due process analysis. Frith's objections are therefore without merit.

The City objects to the Report's finding that the applicable statute of limitations had not run at the time that Frith filed this action, Defendant City of New York's Memorandum of Law in Support of Their Objections to the Report and Recommendation of the Honorable Debra Freeman at 11-16, and to its finding that Frith cannot be deemed to have had constructive notice of the procedures for recovering his property, <u>id.</u> at 16-18. The City also argues that the Second Amended Complaint does not adequately plead facts that show that plaintiff had a possessory interest in the cash found in the vehicle at the time of his arrest. <u>Id.</u> at 18-20.

Taking the City's last objection first, the Court finds it to be without merit.  The City argues that because the cash was found in the console of a vehicle that Frith does not claim he owned and in which Frith was traveling with another individual, it is implausible that the cash belonged to Frith.  The City also raises the possibility that the cash might be the proceeds of illegal drug trafficking, given the facts that drugs were found in the vehicle and that Frith ultimately pleaded guilty to drug trafficking charges.  This objection misses the mark.  While there may well be material issues of fact regarding the ownership of the cash and/or its provenance that would need to be addressed before judgment in favor of Frith was granted, at this stage Frith need simply make out a plausible claim to ownership, see Bell Atlantic Corp v. Twombly, 550 U.S. 544, 547 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009).  On the facts pled, it is possible that the cash belonged to Frith, the owner of the vehicle, or the vehicle's other occupant; and it is possible that it is proceeds of drug trafficking or comes from some other source.  But among these various possibilities, it is plausible that Frith does have a valid possessory interest in the money.

The Court turns next to the City's argument that Frith should be deemed to have had constructive notice of the proper procedures for recovering his property.  The City relies on City of West Covina v. Perkins, 525 U.S. 235 (1999), in which the Supreme Court held that it is not constitutionally required that owners of property seized during a lawful search of premises be given individualized notice of the state-law procedures for recovery of property, id at 240-42; rather,

8

adequate notice is provided by the "published, generally available state statutes and case law," id. at 241.   The City argues that because the procedures for recovery of Frith's property are set forth in the publicly available Rules of the City of New York, more specifically in the Rules of the City of New York title 38 ("City Rule") § 12-32, Frith had adequate notice of them.

But as the Report reasons, Report at 14-15, West Covina did not establish a per se rule that notice of the procedures for recovering seized property is adequate if those procedures are published in state statutes and/or case law.   Rather, West Covina applied the general rule of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), which, as the West Covina Court noted, holds that "[a] primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful," West Covina, 525 U.S. at 240 (citing Mullane, 339 U.S. at 314).   See also Mullane, 339 U.S. at 314-15 (stating that "[w]hen notice is a person's due . . . the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it").   The question is whether, taking the facts alleged in the Second Amended Complaint as true, Frith had a meaningful opportunity for a hearing.   The Report reasons that because an arrestee is likely to be incarcerated and so often will not have access to the City Rules, individualized notice is constitutionally required.   Report at 15-16.

The Court also notes that, even assuming that Frith had access to the full panoply of published state and municipal laws and city rules, it is not at all clear that he would then have had adequate

notice of the procedures to be followed to recover his property.   As
the Report relates, see Report at 10-13, the issues presented here have
a long prior history.   In McLendon v. Rosetti, 460 F.2d 111 (2d Cir.
1972), the Second Circuit found unconstitutional New York City
Administrative Code § 435-4.0, which set forth the City's then-
applicable procedures for seizing and disposing of an arrestee's
property.   The City subsequently adopted a set of procedures set forth
in an unpublished order issued by Judge Morris Lasker of the Southern
District of New York (the "Lasker Order"), which include giving the
arrestee a voucher that sets forth the procedures for recovery of his
property, see Alexandre v. Cortes, 140 F.3d 406, 409-10 (2d Cir.
1998).[3]   But while the procedures set forth in the Lasker Order have in
fact been adopted by the City and have been incorporated into the City
Rules, and while New York City Administrative Code § 435-4.0 has been
renumbered as § 14-140, see id. at 409, the substance of § 14-140 has
yet (37 years on) to be amended, see id. at 413.   The City Rules and
the Administrative Code are therefore inconsistent.   As the Alexandre
court noted, "it is certainly understandable that a prisoner might
claim that the City, by not correcting the Code, continues
systematically to mislead arrestees about the procedures for redeeming
their property."   Id.   Under these circumstances, the City's argument

---

[3] The Lasker Order further provides that "[a] claimant must
make a demand upon the property clerk for his property or money
within 90 days of the earlier of (i) the termination of the
criminal proceeding, or (ii) the issuance by the District
Attorney of a release indicating that the property or money is
not needed as evidence."   Alexandre v. Cortes, 140 F.3d at 409-
10.

that Frith had actual and/or constructive notice, in the form of
published statutes, rules, and caselaw, of the appropriate procedures
for recovery of his property, is unpersuasive.

Finally, the Court turns to the issue of the applicable statute
of limitations.  The Report finds that New York's 3-year statute of
limitations for personal injury actions applies to § 1983 actions filed
in New York State, Report at 17; see also Owens v. Okure, 488 U.S. 235,
249-50 (holding that "courts considering § 1983 claims should borrow
the [state's] general or residual statute for personal injury
actions"), and it then accurately notes that while this 3-year
limitations period is determined by state law, the date of accrual of a
§ 1983 claim is governed by federal law, Report at 17 (citing Eagleston
v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) and Singleton v. City of New
York, 632 F.2d 185, 191 (2d Cir. 1980)).  Because Frith filed this
action on April 10, 2007, his § 1983 claim against the City would be
time-barred if it accrued prior to April 10, 2004.

The question, then, is when Frith's § 1983 claim accrued, and
as the Report notes, Report at 17, under federal law such a claim
accrues at "that point in time when the plaintiff knows or has reason
to know of the injury which is the basis of his action," Singleton, 932
F.2d at 191; see also Eagleston, 41 F.3d at 871.  Because the injury of
which Frith complains is not that his property was seized upon his
arrest but that he was permanently deprived of his property without
notice of the procedures for reclaiming it, see Report at 17, the
relevant point in time is when he discovered that he had been
permanently deprived of his property without proper notice.  Because

11

Frith alleges that he first learned of the appropriate procedures on
October 31, 2007, the Report finds that, at this stage of the
litigation, Frith's claim cannot be found to be time-barred.  Id. at
18.

     In objecting to this conclusion, the City argues that the
Report erroneously calculated the date on which Frith was deprived of
his property without notice.  Under City Rule 12-32(3)(ii), seized
property "may be disposed of by the police property clerk according to
law unless the claimant demands the property no later than 120 days
after the termination of criminal proceedings."  In light of this rule,
the Report finds that Frith was permanently deprived of his property on
February 14, 2003, 120 days after he pleaded guilty on October 17,
2002.  The City argues that this finding is incorrect because
forfeiture is not automatic under City Rule § 12-32 and, under New York
law, see Moreno v. City, 69 N.Y.2d 432 (1987), a claimant may maintain
a common law action for replevin even after the time period mandated by
the Lasker Order has ended.  Even if credited, however, this argument
is unavailing.  As an initial matter, the City's argument appears to
suggest that Frith was permanently deprived of his property not on
February 14, 2003 but on some later date, perhaps when the statute of
limitations on a cause of action for replevin would have run, which
cannot help the City's cause in arguing that the action is untimely.
But more to the point, the Report does not date the accrual of Frith's
claim to February 14, 2003 (indeed, if this were the date on which
Frith's cause of action accrued, the instant action would be time-
barred) but rather to the date he learned that he had lost his interest

12

in his property without receiving proper notice.  The City does not offer any valid argument that refutes Frith's claim that this did not occur until October 31, 2007.[4]

The City further argues that this case is properly analogized to <u>Bertin v. United States</u>, 478 F.3d 489 (2d Cir. 2007).  In that case, the Second Circuit found that when property has been seized in conjunction with an arrest and a related criminal proceeding has been brought, the statute of limitations in a claim for the return of property brought against the federal government under Fed. R. Crim. P. 41(g) runs from the date of the end of the criminal proceeding.  <u>Id.</u> at 493.  <u>Bertin</u>, however, is inapposite, as it does not address a § 1983 claim and so offers no analysis of when a cause of action based on the constitutional harm here alleged (again, permanently depriving Frith of his property without notice of the procedures for reclaiming it), as distinct from a cause of action for the return of property, would have accrued.

For the foregoing reasons, the Court finds that the objections of both Frith and the City are without merit.  Accordingly, defendant Hill's motion to dismiss the Complaint as against him is granted, and the City's motion to dismiss the Complaint as against it is denied.

---

[4] The City does reiterate its argument that Frith's cause of action accrued when, in October 2003 he wrote to the City seeking the return of his property and received no response.  However, the Court agrees with the reasons given in the Report for rejecting this argument, <u>see</u> Report at 18 n.9 – namely, that this silence from the City would not put Frith on notice that he had permanently lost his interest in his property.

The Clerk of the Court is directed to close entries number 33, 36, and 52 on the docket for this case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        September 23, 2009